**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RICARDO GARZA,
               Appellant,

      v.

DEPARTMENT OF THE AIR FORCE,
               Agency.

DOCKET NUMBER
AT-0752-15-0522-I-1

DATE: November 10, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[*]

Neil C. Bonney, Esquire, Virginia Beach, Virginia, for the appellant.

Daniel J. Watson and James R. Haslup, Eglin Air Force Base, Florida, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his involuntary retirement appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

REVERSE the initial decision, and ORDER the agency to reinstate the appellant to his former position.

¶2        On January 23, 2015, the agency proposed the appellant's removal based on alleged misconduct.  Initial Appeal File (IAF), Tab 7 at 28-36.  Thereafter, he met with an Employee Relations Specialist to discuss his options should he eventually be removed, including the effect of any retirement on various hypothetical scenarios.  IAF, Tab 5 at 5-6.  On March 26, 2015, the appellant received notice that he would be removed from his positon effective that same day.  *Id.* at 16-17.  He immediately submitted his retirement application and retired effective March 25, 2016.  *Id.* at 18-19.

¶3        The appellant then appealed the retirement and contended that it was involuntary because it was based on misinformation provided by the Employee Relations Specialist.  IAF, Tabs 1, 5.  The chief administrative judge found that the appellant made a nonfrivolous allegation of Board jurisdiction and he convened a hearing.  Ultimately, however, he determined that the appellant failed to prove that his retirement was involuntary and he dismissed the appeal for lack of jurisdiction.  Initial Decision (ID) at 1, 17.  The appellant petitions for review.  Petition for Review (PFR) File, Tab 1.

¶4        An employee-initiated action, such as a retirement, is presumed to be voluntary unless the appellant presents sufficient evidence to establish that the action was obtained through duress or coercion or shows that a reasonable person would have been misled by the agency.  *Miller v. Department of Homeland Security*, 111 M.S.P.R. 325, ¶ 8 (2009), *aff'd*, 361 F. App'x 134 (Fed. Cir. 2010).  A retirement action is involuntary if the agency made misleading statements upon which the employee reasonably relied to his detriment.  *Id.* (citing *Scharf v. Department of the Air Force*, 710 F.2d 1572, 1574‑75 (Fed. Cir. 1983)).  The touchstone of the analysis of whether a retirement is voluntary is whether the employee made an informed choice.  *Covington v. Department of Health & Human Services*, 750 F.2d 937, 942 (Fed. Cir. 1984).  A decision made "with

blinders on," based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process. *Miller*, 111 M.S.P.R. 325, ¶ 8 (citing *Middleton v. Department of Defense*, 185 F.3d 1374, 1382 (Fed. Cir. 1999)).  An agency is required to provide information that is not only correct in nature, but adequate in scope to allow an employee to make an informed decision. *Miller*, 111 M.S.P.R. 325, ¶ 8.  This includes an obligation to correct any erroneous information that it has reason to know an employee is relying on. *Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 16 (2009).

¶5    At the hearing, the appellant testified that a major concern in weighing the decision to retire was how it would affect his ability to obtain future employment. Hearing Transcript (HT) at 27, 34.  He stated that his retirement annuity would not be enough to support his family so it was critical that he retire with a clean record.  HT at 26-27.  To that end, he specifically asked the Employee Relations Specialist whether he could retire with a clean record if the retirement was effective before any removal, and he testified that she told him that his retirement under those circumstances would be processed as a normal, voluntary retirement and his permanent records would be clean.  HT at 28.  When the appellant signed the Standard Form (SF) 52 documenting his retirement, it contained no derogatory information and did not refer to any alleged misconduct or any pending adverse action.  HT at 37-38; Hearing Exhibit 1.  The SF-50, however, stated that the appellant retired after receiving a written notice of removal for misconduct.  HT at 31; IAF, Tab 5 at 11.

¶6    When asked whether she told the appellant that his personnel records would contain no derogatory information if he retired before any removal became effective, the Employee Relations Specialist testified, "If he retired, I told him it would be—the legal authority would be a retirement. . . . [A]nd that's the action that would go in the system."  HT at 65.  She did not provide a responsive answer to a direct question about whether the appellant's SF-52 contained information about the removal action (although it clearly did not), HT at 77-78, but she

testified that she knew that, in compliance with guidance from the Office of Personnel Management, the appellant's SF-50 was going to state that he retired after receiving notice that he would be removed for misconduct, HT at 78. She also testified that she did not tell the appellant that this information would be included on the SF-50. HT at 78-79, 81.

¶7    The chief administrative judge found that the appellant made the decision to retire well before the day he signed the SF-52 and therefore did not rely to his detriment on the fact that the SF-52 did not contain any derogatory information. ID at 16. We find that the appellant made his decision to retire soon after receiving the notice of proposed removal but he did so based on the belief that he could retire with a clean record and that his future employment prospects would not be jeopardized. His belief was based on the Employee Relations Specialist's statements that a retirement before any removal took effect would be processed as a normal retirement and on her failure to mention that even if the appellant retired, his records would show that he retired after receiving a notice of removal. We find that the Employee Relations Specialist's failure to provide that information even though the appellant made it clear to her that a clean record was of great importance to him, was a material omission of fact that deprived the appellant of the opportunity to make an informed choice between retiring and facing removal. *See Baldwin*, 111 M.S.P.R. 586, ¶ 44 (noting that the SF-52 erroneously stated that the appellant retired when the agency processed his separation as a resignation); *Miller*, 111 M.S.P.R. 325, ¶ 19 (finding a lack of information concerning the appellant's reduction-in-force appeal rights if he decided to accept a downgrade rather than retire); *Wills v. Department of the Navy*, 37 M.S.P.R. 137, 141 (1988) (noting a lack of information concerning whether the appellant would have a clean record if he retired). Therefore, we conclude that the appellant's decision to retire was the product of misinformation and was involuntary.

¶8    When the Board finds that an appellant's retirement was involuntary, the Board not only has jurisdiction over the appeal, but the appellant wins on the merits and is entitled to reinstatement.  *Baldwin*, 111 M.S.P.R. 586, ¶ 46 (citing *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987)).  The appellant raised other theories of involuntariness that the administrative judge considered and rejected, and which the appellant pursues on review.  In light of our disposition of this petition for review, however, we need not reach these other arguments.

## ORDER

¶9    We ORDER the agency to cancel the appellant's involuntary retirement and reinstate him to his GS-12 Security Specialist position as of March 25, 2015.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).  The agency must complete this action no later than 20 days after the date of this decision.

¶10    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶11    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶12    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement

with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶13    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm.  Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:          _____
                                         Jennifer Everling
                                         Acting Clerk of the Board

Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.